FILED
JUN 23 2023
JUDGE JOHN ROBERT BLAKEY
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YOSHIMI HENRY | No. 18 CR 743-4<br><br>Judge John Robert Blakey |

### PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant YOSHIMI HENRY, and her attorney, GREGG SMITH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The superseding indictment in this case charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341 (Count 8).

3. Defendant has read the charge against her contained in the superseding indictment, and that charge has been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crime with which she has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count 8 of the superseding indictment, which charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341.

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in Count 8 of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

Beginning no later than in or about November 2013, and continuing until in or about December 2015, defendant YOSHIMI HENRY, along with Ashley Weathersby, Corey Logsdon, and others, knowingly devised, intended to devise, participated in a scheme to defraud and to obtain money and property, in the form of unemployment insurance benefit funds from the State of Illinois, by means of materially false and fraudulent pretenses, representations, and promises, and in furtherance thereof, used the United States mail, in violation of Title 18, United States Code, Section 1341.

Specifically, the Illinois Department of Employment Security ("IDES") operated the State of Illinois' unemployment insurance program. Unemployed individuals in Illinois who were terminated without fault could file a claim over the Internet with IDES and receive unemployment benefits during the period of time in which they were unemployed, were able to work, and had been actively seeking work. Claimants could choose to have their unemployment benefits loaded onto a debit card or directly deposited to a bank account. If the funds were loaded onto a debit card,

2

the debit card typically would be mailed to the claimant at an address provided by the claimant.

Between November 2013 and December 2015, Corey Logsdon filed fraudulent IDES claims using the names and social security numbers of at least 171 people without their authorization. Along with others, HENRY knowingly participated in the scheme by assisting Logsdon with accessing personal identifying information for individuals on whose behalf fraudulent IDES claims could be submitted, and by obtaining access to various mailing addresses used to receive debit cards loaded with fraudulently obtained unemployment benefit funds.

More specifically, in November 2013, HENRY knew that Ashley Weathersby worked in the office of Health Care Provider A, a health care provider in the Chicago area, and had access to personal identifying information of Health Care Provider A's patients, such as names and social security numbers. HENRY told Weathersby that Weathersby could make money by selling personal identifying information of patients of Health Care Provider A to co-schemer Corey Logsdon. Weathersby provided HENRY with the personal identifying information of Health Care Provider A patients, and HENRY passed that information to Logsdon. HENRY then provided Weathersby's telephone number to Logsdon so that Logsdon could contact Weathersby directly to obtain identifying information of Health Care Provider A patients.

3

In exchange for cash payments, HENRY also provided Logsdon with at least 35 mailing addresses in the Chicago area for use in the scheme. HENRY recruited and paid other individuals, including Individual A, to give HENRY access to mailing addresses in the Chicago area. HENRY provided those addresses to Logsdon in exchange for money, knowing that Logsdon would use those addresses as the mailing address for IDES to send fraudulently obtained IDES debit cards. At Logsdon's direction, and in exchange for payment from Logsdon, HENRY then retrieved fraudulently obtained debit cards from the addresses she had provided to Logsdon. HENRY also paid others, including Individual A, to retrieve fraudulently obtained debit cards from other addresses in the Chicago area, and to give the cards to Logsdon. HENRY acknowledges that co-schemer Logsdon used the personal identifying information, including names and social security numbers, of 171 people, to obtain IDES debit cards with fraudulently obtained funds, and that such use was reasonably foreseeable to HENRY.

As charged in Count Eight of the superseding indictment, on or about November 13, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, HENRY, for the purpose of executing the scheme to defraud, did knowingly cause to be delivered by mail according to the direction thereon, a Chase prepaid debit card associated with an account ending in 2965, in the name of Victim J.A., and addressed to 3XXX N. Luna Avenue, Chicago, Illinois, in violation of Title 18, United States Code, Section 1341. On that date, HENRY sent Logsdon a text

4

message with an address, 3XXX N. Luna Avenue ("the Luna address"), and told Logsdon to "use Luna," meaning Logsdon should use the Luna address when making a fraudulent claim to IDES.

HENRY acknowledges that, on the same day, IDES, as a result of a fraudulent claim filed by Logsdon, caused Chase Bank to send by U.S. mail a prepaid IDES debit card associated with an account ending in -2965 in the name of victim J.A., to the Luna address. The debit card issued in the name of victim J.A. was subsequently used by co-schemers Brandon Pitts and Korey Isbell to withdraw approximately $9,500 from ATM machines located in Chicago, Illinois, and Los Angeles, California, between December 5, 2013 and May 1, 2014.

During the scheme, HENRY's co-schemers filed and caused to be filed false and fraudulent unemployment insurance claims seeking approximately $8.8 million in unemployment benefits in the names of, and using the personal identification information of, at least 892 individuals, and caused actual losses to IDES totaling approximately $1.5 million. HENRY caused fraudulent claims seeking approximately $281,380 to be submitted to IDES, and caused actual losses to IDES totaling at least $79,993.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

5

   a. A maximum sentence of 20 years' imprisonment. Count 8 also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

   c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the count to which she has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

 8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b. **Offense Level Calculations**.

i. The base offense level is seven, pursuant to Guideline § 2B1.1(a)(1).

ii. The offense level is increased by 6 levels, pursuant to Guideline § 2B1.1(b)(1)(D), because the actual loss is more than $40,000 and less than $95,000.

iii. The offense level is increased by two levels, pursuant to Guideline § 2B1.1(b)(2)(A), because the offense involved 10 or more victims.

iv. The offense level is increased by two levels, pursuant to Guideline § 2B1.1(b)(11)(C)(ii), because the offense involved five or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification.

7

v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense

level is 14, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 15 to 21 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

   e. Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

  10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable

provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with jointly liable co-defendants, to make full restitution to the Illinois Department of Employment Security in the amount of at least $79,993, which amount shall reflect credit for any funds repaid prior to sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the forfeiture allegation as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 743.

19. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

11

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

20. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

### Waiver of Rights

21. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against her, and if she does, she would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

.          .

   iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

   vi.  At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii.  At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be

drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

      b.    **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

      22.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

      23.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

      24.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's

Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including

providing financial statements and supporting records as requested by the United States Attorney's Office.

27. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

28. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

29. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30. Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33. Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 6-23-23

---

MICHELLE PETERSEN
Digitally signed by MICHELLE PETERSEN
Date: 2023.06.20 15:09:32 -05'00'

MORRIS PASQUAL
Acting United States Attorney

CHARLES MULANEY
Digitally signed by CHARLES MULANEY
Date: 2023.06.20 12:24:41 -05'00'

CHARLES W. MULANEY
Assistant U.S. Attorney

YOSHIMI HENRY
Defendant

GREGG SMITH
Attorney for Defendant